UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Lori Lyn Ormond,
      Claimant

      v.                                Case No. 12-cv-361-SM
                                        Opinion No. 2013 DNH 146
Carolyn W. Colvin Acting Commissioner,
Social Security Administration,
      Defendant

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Claimant, Lori Lyn Ormond, moves to reverse the Commissioner's decision denying her application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the "Act"). See Document No. 7. The Commissioner objects and moves for an order affirming her decision, Document No. 10.

**Factual Background**

I.   Procedural History

On August 24, 2010, claimant filed an application for disability insurance benefits, alleging disability since May 5, 2009, primarily due to hearing loss and hypertension. Her application for benefits was denied and she requested an administrative hearing before an Administrative Law Judge ("ALJ").

Claimant, who was represented by counsel, appeared and testified before an ALJ on April 3, 2012. On April 27, 2012, the ALJ issued his written decision, concluding that claimant was not disabled within the meaning of the Act. On July 20, 2012, the Appeals Council denied claimant's request for review. Accordingly, the ALJ's decision became the final decision of the Commissioner, subject to judicial review.

Claimant then filed a timely action in this court, appealing the denial of disability benefits. Now pending are claimant's "Motion for Order Reversing Decision of the Commissioner" and the Commissioner's "Motion for Order Affirming the Decision of the Commissioner."

II. Stipulated Facts

Pursuant to Local Rule 9.1(d), the parties submitted a Joint Statement of Material Facts which, because it is part of the court record (doc. no. 11), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. "Substantial Evidence" and Deferential Review

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

Consequently, provided the ALJ's findings are properly supported, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position. See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981).

II. The Parties' Respective Burdens

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982). If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). See also 20 C.F.R. §§ 404.1512(g) and 416.912(g).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective

medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982). Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A). See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm her decision.

## Discussion

I. The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520. He first determined that claimant had not been

engaged in substantial gainful employment since her alleged onset of disability. Next, he concluded that claimant has the severe impairment of "bilateral hearing loss (mixed)." Administrative Record ("Admin. Rec.") at 15. He further determined that claimant "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." Id. at 16.

Next, the ALJ found that claimant retained the residual functional capacity "to perform a full range of work at all exertional levels," except that she "is limited from work requiring keen hearing and must avoid even moderate exposure to noise."[1] Id. Based upon that finding, he concluded that claimant "is capable of performing past relevant work as a reconciliation specialist" (payroll clerk) and "other jobs existing in the national economy." Id. at 17. Consequently, the

---

1 "RFC is what an individual can still do despite his or her functional limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision. Id. at 18.

On appeal, claimant argues that the ALJ erred in finding, at Step 4, that she could do her past work as a payroll clerk. Claimant also argues that the ALJ's alternative finding at Step 5 — that there were other jobs in the national economy that claimant could perform – is not supported by substantial evidence. Because the ALJ did not err at Step 4 in concluding that claimant could do her past work, the court does not address claimant's Step 5 argument. See Martinez-Guadalupe v. Astrue, 2009 WL 2929831, at *7 (D.P.R. Sept. 8, 2009) (where ALJ did not err at Step 4, court need not address Step 5 issues).

II. The ALJ's Decision at Step 4 That Claimant Could Perform Her Past Relevant Work

"At step 4 of the sequential evaluation process, 20 C.F.R. § 404.1520(e), a claimant will be found not disabled when he or she retains the RFC to perform 'the actual functional demands and job duties of a particular past relevant job.'" Santiago v. Sec'y of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991) (internal quotation marks and citation omitted). Where she "can still perform the demands and duties of a former job as she actually performed it, a finding of non-disability is appropriate." Id. (emphasis added).

SSR 82-62 requires the ALJ at Step 4 to develop the record as needed and to make specific factual findings:

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.
>
> * * *
>
> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, at *3-4 (1982).

As noted, the ALJ, here, found that claimant had the residual functional capacity "to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited from work requiring keen hearing and must avoid even moderate exposure to noise." Admin. Rec. at 16. In light of these capabilities and limitations, the ALJ further concluded, at Step 4, that "claimant is capable of performing past relevant work" as a payroll clerk. Id. at 17. The ALJ explained that,

> [t]he claimant's description of this work at Exhibit 3E, p.3 [Work History Report] is not inconsistent with the limitations found herein. In fact, it is noted that the claimant did perform this work between 2004 and 2009 with no evidence that her medical condition deteriorated at the time she stopped working in May 2009 or since that time (Exhibit 3F, p.19 and Exhibit 6F).

Admin. Rec. at 17.

Claimant first argues that, in determining that she could perform her past work as a payroll clerk, the ALJ did not fulfill his duty under SSR 82-62 to more fully develop the record. She says he should have inquired about the effects of her allegedly "frequent" ear infections. Specifically, she says, the ALJ should have tried to find out whether frequent ear infections were the cause of her termination from the payroll clerk job and "to what degree her job duties could not be performed" as a result of the allegedly "frequent" ear infections. Pl. Reply, doc. no. 13, at 4. The argument is rejected.

The ALJ's duty to develop the record further is not "triggered" if claimant does not meet her initial burden at Step 4. Gillis v. Astrue, 2009 WL 948655, at *7 (D.N.H. April 6, 2009). Claimant must come forward with "at least . . . some minimal information about the activities that her past usual work required, including those which can no longer be performed," and she must "describe those impairments or limitations which she

says she has ... so as to 'raise the point to the [Commissioner]' ... how [her] current functional capacity ... precludes the performance of the particular prior job." Santiago, 944 F.2d at 5 (emphasis and citations omitted). "In short, not only must the claimant lay the foundation as to what activities her former work entailed, but she must point out (unless obvious) — so as to put in issue — how her functional incapacity renders her unable to perform her former usual work." Id. See also Gillis, 2009 WL 948655, at *7 (holding ALJ not obligated to further develop the record where claimant did "not say how his mental health issues precluded him from performing [his]. . . job") (relying on Santiago, 944 F.2d at 6).

It is doubtful that claimant clearly raised the issue of why she was terminated from her job as a payroll clerk, such that the ALJ was obligated to make further inquires. It is true that claimant answered "[b]ecause of my condition(s)" when asked in her Disability Report "[w]hy did you stop working?" Admin. Rec. at 168. But she never elaborated beyond that general statement. For example, she did not testify at the administrative hearing about the reasons for her termination. And although she was given a general prompt in the Work History Report to provide any

additional information about that job, claimant chose not to do so.[2]

But even assuming that claimant adequately raised the issue of why she was terminated, the ALJ fulfilled his duty to elicit further information. At the end of the administrative hearing, the ALJ asked claimant "what happened" on May 5, 2009, the date she claimed she became disabled. Plaintiff answered only that she was "let go" from her job. Admin. Rec. at 31. The ALJ then immediately asked claimant's counsel if she had any more questions for the claimant, and she stated that she did not. Id. Under these circumstances, the ALJ fulfilled his duty and was not required to do more. See Faria v. Comm'r of Soc. Sec., 187 F.3d 621 (1st Cir. Oct. 2, 1998) (Table) (ALJ "'should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored.'") (quoting Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997)). Cf. Dubois v. Astrue, 2012 WL 2357258, at *5, n.4 (D.N.H. June 30, 2012) (Laplante, J.) (rejecting claimant's argument that ALJ should have contacted claimant's physician to ask him to clarify his treatment notes where, among other things, claimant's "own counsel did not

---

2  Notably, as the defendant points out, claimant placed a letter in the record before the Appeals Council stating that she had been "layed [sic] off." Admin. Rec. at 204.

contend at the hearing that any further record development was necessary.") (citing Faria, 187 F.2d 621).[3]

With regard to the effects of her ear infections on her ability to carry-out her job duties, claimant argues that she made a threshold showing that she "had frequent ear infections and that these infections lasted for several days during which she could not use her hearing aids . . . ." Pl. Reply, Doc. No. 13, at 3. She says, therefore, that she successfully raised the issue of the effects of her ear infections on her ability to meet the demands of her prior work as a payroll clerk. In determining the demands of claimant's past work, as actually performed by her, the ALJ "is entitled to rely upon claimant's own description of the duties involved." Santiago, 944 F.2d at 5. See also SSR 82-62 ("claimant is the primary source for vocational documentation"). Claimant here, however, made no demonstrable effort to explain what the hearing and communication demands of her job were (although she described other demands)[4,] nor did she

---

3 Notably, as pointed out by the ALJ, claimant worked for Fidelity as a payroll clerk for five years prior to her termination, and nothing in the medical record indicated that her condition deteriorated over those years, or has since then. Accordingly, even if the ALJ erred in not inquiring further into the reasons for claimant's job loss, the error would likely have been harmless since there was substantial evidence that claimant retained the same capabilities, over time and post-termination, to do the payroll job as actually performed.

4 Claimant argues that she should be excused from not explaining the communication and hearing demands of her job on the Work History Report. She says the Report only asked questions about

explain how her ear infections rendered her incapable of carrying out her job.  Even assuming, without deciding, however, that claimant met her threshold burden, a failure by the ALJ to uncover the effects of ear infections on job performance was not prejudicial.  The best case scenario, from claimant's perspective, is that the ALJ's further inquires would have revealed that her ear infections made her completely incapable of doing essential job tasks and that each infection lasted several days.  Those facts would be important, however, only if claimant experienced ear infections "frequently," as she claims.  Indeed, she testified that her ears become infected approximately two times every six to seven weeks.  The ALJ, however, found her testimony not credible.  He pointed out that her medical records showed treatment for ear infections only twice in a two-year period.  See Admin. Rec. at 17 (the medical evidence, which showed only two infections over a two-year period, "does not

---

the exertional and postural demands of the job and did not ask her to address "activities such as hearing, listening, and communicating."  Pl. Br., Doc. No. 7-1, at 5.  The argument is misplaced.  As noted, on the page of the Work History Report asking for "more information about" the payroll clerk job, the very first instruction directed Claimant to "[d]escribe this job," and, further, asked her what she "did all day."  The form also provided an entire page in the "Remarks" section for claimant to provide more detail.  In short, the form gave ample room (and prompt) for Claimant to discuss the hearing and communication requirements of her former job, but she declined to provide that information.  Notably, in response to the same general prompts on the same form, claimant did provide such information as it related to her prior work as a support specialist for Enterasys.

13

support a frequency of ear infection as alleged by the claimant."). Because substantial evidence supports the ALJ's finding that claimant did not experience frequent ear infections, as a practical matter further inquiry regarding "to what degree" infrequent ear infections might have impacted her job performance, would seem irrelevant.

Claimant's final argument is that the ALJ erred in not making specific findings at Step 4 as to the actual demands of her payroll clerk job, as required by SSR 82-62. The ALJ, however, was entitled to rely on claimant's own description of the job demands in her Work History Report and at the hearing. See Santiago, 944 F.2d at 5. In view of the record evidence, the ALJ reasonably concluded that the demands of claimant's payroll clerk job, as she actually performed it, were compatible with her limitations. See Sullivan v. Halter, 2001 WL 1646467, at *5 (D.N.H. Dec. 7, 2001) (Barbadoro, J.) (affirming ALJ's decision despite absence of specific factual finding regarding the demands of claimant's past occupation, where ALJ reasonably relied on description of occupation in the DOT); Rivera v. Comm'r of Social Security Admin., 2013 WL 4736396, at *11 (D.P.R. Sept. 3, 2013) ("The mental RFC limitations found by the ALJ are not inconsistent with performance of [claimant's] past work . . . as described by claimant herself. I find that the ALJ's determination would have been the same even if the decision

contained a more detailed finding of facts as to past relevant work.").

For these reasons, the ALJ's Step 4 determination that claimant has the functional capacity to perform her past work as a payroll clerk is supported by substantial evidence.

## Conclusion

Claimant's motion to reverse the decision of the Commissioner (document no. 7) is necessarily denied. The Commissioner's motion to affirm his decision (document no. 10) is granted. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 4, 2013

cc: Raymond J. Kelly, Esq.
    Robert J. Rabuck, Esq.